IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| JASMINE WILSON, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CIV. ACT. NO. 1:24-cv-168-TFM-M |
| | ) |
| ESCAMBIA COUNTY BOARD OF EDUCATION, *et al.*, | ) |
| | ) |
| Defendants. | ) |

**MEMORANDUM OPINION & ORDER**

Pending before the Court is *Defendant Howard's Consolidated Motion for Judgment on the Pleadings and Brief in Support Thereof* (Doc. 30, filed 12/03/24). Plaintiff filed her response and Defendant filed her reply. Docs. 32, 33. For the reasons detailed below, Defendant Howard's motion for judgment on the pleadings (Doc. 30) is **DENIED**.

**I.      JURISDICTION AND VENUE**

The Court has subject matter jurisdiction over the claims in this action pursuant to 28 U.S.C. § 1331 (federal question). Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events that gave rise to the claims in this matter occurred in this judicial district.

No party contests jurisdiction or venue, and the Court finds adequate support for both.

**II.      BACKGROUND**

**A.      Factual Background**

This case arises out of the alleged rape of Plaintiff Jasmine Wilson ("Plaintiff" or "Wilson"), a former student at Escambia County High School, by her former teacher, Kasuan

Bullard ("Bullard").[1]  *See* Doc. 26.  At the time of the alleged rape, Bullard taught drivers education and health at Escambia County High School and was the defensive coordinator for the football team and head coach of the baseball team.  *Id.* at 5-6.  Plaintiff alleges that Bullard engaged with female students in an inappropriate and sexualized manner that was open and observable to students, teachers, and staff.  *Id.* at 6.  Plaintiff asserts that Bulland began grooming her in the tenth grade, and that the acts of grooming were open and observed by teachers, staff, and students.  *Id.* at 7.

Bullard's classroom was next to that of another teacher's classroom, Defendant Rosa Howard ("Howard").  *Id.* at 8.  Plaintiff alleges that Howard gave Bullard unfettered access to isolate Plaintiff.  *Id.*  On May 21, 2021, Plaintiff states that she was in Howard's classroom to complete make up work.  *Id.* at 9.  Bullard went to Howard's classroom and requested Plaintiff ride in the car for one of Bullard's drivers' education students.  *Id.* at 10.  Howard sent Plaintiff with Bullard and a male student for the male student to do a driving session.  *Id.*  After the test was over, Plaintiff asserts that Bullard told the students he needed assistance with something in the new gym.  *Id.*  Plaintiff states that she went to the new gym and hid in the bathroom until she thought the other student would have also arrived, but when she came out the other student was not there.  *Id.*  Bullard then asked Plaintiff to go with him to get some boxes and led her through a door into the new girls' locker room where he raped her.  *Id.*  Plaintiff recalls as follows: "Once inside the locker room, Bullard started touching Plaintiff.  He grabbed Plaintiff by her neck, choked her, and pulled her hair.  Bullard unbuttoned her pants, forced Plaintiff to turn around, bent her over the countertop, and raped her.  Plaintiff was terrified, unable to move or fight back."  *Id.* at 10-11.

---

[1] Plaintiff was a student at Escambia County High School at the time of the events at issue in the Complaint, but she has since graduated and is over the age of majority.  Bullard died prior to the filing of the Complaint.

Plaintiff states that she was crying and that Bullard forced her to put her clothes back on. *Id.* at 11.

Plaintiff further states that in the aftermath of the rape, her mental health declined, and she engaged in self-harm. *Id.* at 11. She also states that, though she was enrolled in summer school, she was terrified to attend as Bullard was there, and she often skipped school out of fear that he would rape her again. *Id.* In mid-June, Plaintiff told her sister about the rape, and her sister reported it to Defendant Amy Cabaniss ("Cabaniss"), the school principal. *Id.* Cabaniss called Plaintiff to come to campus and make a report, which Plaintiff did. *Id.* at 11-12. Plaintiff asserts that Cabaniss did not provide her with any information about the school's Title IX policy, reporting procedures, supportive measures, or her right to report the incident to the U.S. Department of Education or Department of Justice. *Id.* at 12. Cabaniss only told Plaintiff that she would make a police report and there would be an investigation. *Id.*

Prior to coming to the school to report the rape, Plaintiff took a handful of pills. *Id.* at 11. After Plaintiff reported the rape, she began to feel dizzy and disclosed that she took the pills before coming in. *Id.* at 12. The school nurse drove her to Atmore Community Hospital. *Id.* The same day, other students began bullying her online. *Id.* Plaintiff asserts that the only people who knew what happened were teachers and administrators at the school, Plaintiff's best friend, and Plaintiff's sister. *Id.* Plaintiff does not believe her sister or friend would have told anyone. *Id.* Plaintiff experienced trouble sleeping and concentrating, flashbacks to the rape, and panic attacks. *Id.* She required inpatient psychiatric treatment. *Id.*

Plaintiff states that no one from the school updated her about what was happening as a result of her reporting the rape. *Id.* at 13. Ultimately, the Escambia County Sheriff's Office issued arrest warrants for Bullard for rape in the first degree and sexual contact with a student under the age of nineteen. *Id.* The day Bullard was supposed to surrender himself to the Sheriff's office, he

died in a car crash. *Id.*

Following Bullard's death, the bullying continued. *Id.* at 14. Plaintiff alleges that Howard also began harassing her. *Id.* Specifically, on the day that Bullard died, Plaintiff asserts that Howard texted her the word "disgrace." *Id.* Then, on August 4, 2021, Howard commented on a news article reporting on Bullard's death "that Plaintiff was delusional, accused her of falsely reporting sexual assault in the past, and claimed Plaintiff had a victim mindset." *Id.* On September 13, 2021, Plaintiff states that Howard posted a TikTok video of Bullard's gravestone and wrote on the video "[s]he really is the cause of your death! How can she live with herself! I pray to God she die a slow and painful death." *Id.* at 17. Howard also sent messages to Plaintiff such as "[y]ou are a liar and your lies caused a death" and that nobody believed Plaintiff and that other teachers said Plaintiff lied about an assault in middle school. *Id.* Plaintiff asserts that Howard even went so far as to message Plaintiff's family member accusing her of lying about the rape. *Id.* Though Howard was allegedly fired from her job with Escambia County Schools in May, she began working as a special education teacher for Mobile County Schools in August 2021. *Id.* at 15.

Before the fall semester began, Plaintiff approached Cabaniss about the bullying. *Id.* at 15. She requested to attend school virtually, noting that she did not wish to go back to the site of her rape. *Id.* Cabaniss denied the request and told her she either had to come in person or attend another high school, also in person. *Id.* Cabaniss suggested Plaintiff be placed in classes with students she would be comfortable with and took the names of such students from Plaintiff. *Id.* However, when school started, Plaintiff states she did not have supportive students in a majority of her classes. *Id.* Plaintiff was placed in classes that required her to go down the hallway near her rape site, and she would often skip classes requiring that route and cry in the bathroom. *Id.* The harassment and bullying continued from students, while teachers and administrators also gossiped about Plaintiff. *Id.* at 16. Plaintiff reported the bullying and harassment to Cabaniss, but

it continued. *Id.* After her therapist met with Cabaniss, Plaintiff was finally permitted to attend school virtually. *Id.* at 16-17. Despite counseling, Plaintiff still struggles with emotional distress, rumination, embarrassment, humiliation, and trauma, which she states is exacerbated by the repeated harassment from her classmates and teachers. *Id.* at 18.

**B.     Procedural Background**

On May 24, 2024, Plaintiff filed her original complaint with this Court. Doc. 1. The Escambia County Board of Education ("BOE") filed an answer on June 24, 2024. *See* Doc. 8. Howard filed her answer on June 20, 2024. *See* Doc. 6. On July 3, 2024, Cabaniss filed her motion to dismiss the original complaint. *See* Doc. 11. Then, on July 16, 2024, Howard filed a motion for judgment on the pleadings. Doc. 16. On November 5, 2024, the Court ordered Plaintiff to file an amended complaint. Doc. 25. Plaintiff filed her amended complaint on November 18, 2024, which became the operative complaint. Doc. 26.

As to Howard, Plaintiff's amended complaint asserts claims for denial of substantive due process under 42 U.S.C. § 1983 and the Fourteenth Amendment (Count V) and denial of equal protection under 42 U.S.C. § 1983 and the Fourteenth Amendment (Count VII).

Both BOE and Howard filed answers to Plaintiff's amended complaint. Docs. 27, 28. Cabaniss filed another motion to dismiss, which the Court denied in a separate order on this same date. Docs. 29. After filing her answer, Howard filed the instant motion for judgment on the pleadings. Doc. 30. Plaintiff filed her response to Howard's motion, and Howard filed her reply. Docs. 32, 33. The motion is fully briefed and ripe for review, and the Court finds oral argument unnecessary.

**III.     STANDARD OF REVIEW**

The Federal Rules of Civil Procedure provide that "[a]fter the pleadings are closed-but early enough not to delay trial-a party may move for judgment on the pleadings." FED. R. CIV. P.

12(c). Judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c) is appropriate when "no issues of material fact exist, and the movant is entitled to judgment as a matter of law." *Ortega v. Christian*, 85 F.3d 1521, 1524-25 (11th Cir. 1996). When reviewing a judgment on the pleadings, the court must accept the facts in the complaint as true and view them in the light most favorable to the nonmoving party. *Id.* A judgment on the pleadings is limited to consideration of "the substance of the pleadings and any judicially noticed facts." *Bankers Ins. Co. v. Fla. Residential Prop. & Cas. Joint Underwriting Ass'n*, 137 F.3d 1293, 1295 (11th Cir. 1998). In other words, a Fed. R. Civ. P. 12(c) motion "is subject to the same standard as a motion to dismiss under Rule 12(b)(6)." *Doe v. Myspace, Inc.*, 528 F.3d 413, 418 (5th Cir. 2008); *see also Edwards v. City of Goldsboro*, 178 F.3d 231, 243-44 (4th Cir. 1999) (applying Fed. R. Civ. P. 12(b)(6) standard of review to a Fed. R. Civ. P. 12(c) motion).

Eleventh Circuit precedent discussing the standard of review for a motion under Fed. R. Civ. P. 12(c) indicates "[j]udgment on the pleadings is appropriate only when the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."). *Horsley v. Feldt*, 304 F.3d 1125, 1131 (11th Cir. 2002) (quoting *Moore v. Liberty Nat'l Life Ins. Co.*, 267 F.3d 1209, 1213 (11th Cir. 2001)); *see also Horsley v. Rivera*, 292 F.3d 695, 700 (11th Cir. 2002) ("If upon reviewing the pleadings it is clear that the plaintiff would not be entitled to relief under any set of facts that could be proved consistent with the allegations, the court should dismiss the complaint."). These cases have not yet been explicitly overturned. However, that same language was previously utilized in the context of a Fed. R. Civ. P. 12(b)(6) motion to dismiss prior to *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). In *Twombly*, the Supreme Court explained that this "no set of facts" language "earned its retirement" because it is simply "an incomplete, negative gloss on an accepted pleading standard: once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the

complaint." *Id.* at 563. As caselaw is clear that the standards are functionally identical for a Fed. R. Civ. P. 12(b)(6) and 12(c) motion, the Court will apply the Twombly standard. *See, e.g.*, *Perez-Acevedo v. Rivero-Cubano*, 520 F.3d 26, 29 (1st Cir. 2008) (applying Twombly to a Fed. R. Civ. P. 12(c) motion); *Tucker v. Middleburg-Legacy Place, LLC*, 539 F.3d 545, 549-50 (6th Cir. 2008) (same); *Doe v. MySpace Inc.*, 528 F.3d at 418 (same); *Pisciotta v. Old Nat'l Bancorp*, 499 F.3d 629, 633 (7th Cir. 2007) (same).

As a result, the Court must draw "all reasonable inferences in the [non-movant's] favor." *St. George v. Pinellas Cnty.*, 285 F.3d 1334, 1337 (11th Cir. 2002). However, the Court is not required to accept a plaintiff's legal conclusions. *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009). The U.S. Supreme Court has suggested that courts adopt a "two-pronged approach" when considering motions to dismiss: "1) eliminate any allegations in the complaint that are merely legal conclusions; and 2) where there are well-pleaded factual allegations, 'assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.'" *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1290 (11th Cir. 2010) (quoting *Iqbal*, 556 U.S. at 679). Importantly, "courts may infer from the factual allegations in the complaint 'obvious alternative explanation[s],' which suggest lawful conduct rather than the unlawful conduct the plaintiff would ask the court to infer." *Id.* (quoting *Iqbal*, 556 U.S. at 682).

## IV.   DISCUSSION AND ANALYSIS

As an initial matter, the Court notes that when it entered its order for Plaintiff to file an amended complaint, it also instructed Howard to explain, should she choose to file a new motion for judgment on the pleadings as it related to the amended complaint, why the Court should entertain such a motion when she already waived the filing of a Rule 12(b)(6) motion to dismiss by filing an answer. *See* Doc. 25 at 4 n.2. Howard listed numerous reasons in her motion. However, the only compelling reason the Court finds listed is that Howard asserts the defense of

qualified immunity. *See* Doc. 30 at 3-5. Thus, the Court will only address her qualified immunity argument in her motion for judgment on the pleadings. *See Gonzales v. Reno*, 325 F.3d 1228, 1233 (11th Cir. 2003) ("Because qualified immunity is an entitlement not to stand trial or face the other burdens of litigation, questions of qualified immunity must be resolved at the earliest possible stage in litigation."). The remaining arguments in the motion could have and should have been raised in a 12(b)(6) motion to dismiss. *See D'Alessandris v. Sarasota Cnty., Fla.*, Civ. Act. No. 8-07-cv-1975-T-26TGW, 2008 U.S. Dist. LEXIS at *1 (M.D. Fla. Feb. 26, 2008) (noting that a motion for judgment on the pleadings is not meant to be an end run around a procedural defect in the failure to assert a motion to dismiss under 12(b) and that the failure to file a 12(b) motion before filing an answer precludes the ability to later raise the failure to state a claim for relief under Rule 12(b)(6)) (citing *Leonard v Enterprise Rent A Car*, 279 F.3d 967, 971 n.6) (11th Cir. 2002)).

Howard argues that she is entitled to qualified immunity for the claims asserted against her as a government employee. Doc. 30 at 16. Specifically, she argues that she acted at all times within the scope of her discretionary authority as a teacher, and that the allegations fail to indicate that her actions violated Plaintiff's rights or that it was clearly established that her actions would have violated the law. *Id.* at 16-17.

"The qualified immunity defense shields 'government officials performing discretionary functions . . . from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Corbitt v. Vickers*, 929 F.3d 1304, 1311 (11th Cir. 2019) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). "While the defense of qualified immunity is typically addressed at the summary judgment stage of a case, it may be . . . raised and considered on a motion to dismiss." *St. George v. Pinellas Cnty.*, 285 F.3d 1334, 1337 (11th Cir. 2002).

To overcome a defense of qualified immunity, "the plaintiff must make two showings."

*Corbitt*, 929 F.3d at 1311.  First, the plaintiff "must establish that the defendant violated a constitutional right." *Id.* (quoting *Griffin Indus., Inc. v. Irvin*, 496 F.3d 1189, 1199-1200 (11th Cir. 2007).  Second, the plaintiff "must show the violated right was 'clearly established.'" *Id.* (quoting *Griffin Indus., Inc.*, 496 F.3d at 1199-1200).  Federal district courts may "exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Id.* (quoting *Pearson v. Callahan*, 555 U.S. 223, 236 (2009)).

"If the official did not violate the law, the inquiry ends." *Griffin Indus., Inc.*, 496 F.3d at 1200.  "Generally speaking, it is proper to grant a motion to dismiss on qualified immunity grounds when the 'complaint fails to allege the violation of a clearly established constitutional right.'" *Corbitt*, 929 F.3d at 1311 (quoting *St. George*, 285 F.3d at 1337).

"For a right to be clearly established, '[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.'" *Id.* (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)).  The Eleventh Circuit has "identified three different ways a plaintiff can show that the state of the law gives officials fair warning of a clearly established right." *Id.* at 1312.  First, the plaintiff can "show that a materially similar case has already been decided." *Id.* (quoting *Mercado v. City of Orlando*, 407 F.3d 1152, 1159 (11th Cir. 2005)).  In the Eleventh Circuit, a right may be clearly established by "judicial decisions of the United States Supreme Court, the United States Court of Appeals for the Eleventh Circuit, and the highest court of the relevant state." *Id.* (quoting *Griffin Indus., Inc.*, 496 F.3d at 1199 & n.6)).

Second, the plaintiff can show that a right is clearly established if he can show "'that a broader, clearly established principle should control the novel facts' of a particular situation." *Id.* (quoting *Mercado*, 407 F.3d at 1159).  In this scenario, "the principle must be established with obvious clarity by the case law so that every objectively reasonable government official facing the

circumstances would know that the official's conduct did violate federal law when the official acted." *Id.* (quoting *Loftus v. Clark-Moore*, 690 F.3d 1200, 1205 (11th Cir. 2012)). Or "[p]ut another way, 'in the light of pre-existing law the unlawfulness must be apparent.'" *Id.* (quoting *Loftus*, 690 F.3d at 1205).

Third, a plaintiff may show that a right is clearly established if the case "fits within the exception of conduct which so obviously violates [the] constitution that prior case law is unnecessary." *Id.* (quoting *Mercado*, 407 F.3d at 1159).

Plaintiff has alleged that "Howard knew about Bullard's rampant, obvious, and continuous sexual harassment of female students, and, specifically, his special interest in Plaintiff and his grooming of her at school[,]" that "Howard conspired or was aware of Bullard's intent to commit a sexual assault[,]" that "Howard provided Bullard special, unfettered access to Plaintiff[,]" and that "[k]nowing Bullard's history of targeting Plaintiff, Defendant Howard allowed Bullard to isolate Plaintiff by complying with his repeated, atypical requests to have Plaintiff accompany him . . . even though Plaintiff had work to finish and there were other students available who had completed their work." Doc. 26 at 35-26. Additionally, Plaintiff has alleged that, while employed by Mobile County Schools Systems, Howard sexually harassed Plaintiff in violation of her equal protection rights both publicly and privately. *Id.* at 42. In regard to the sexual harassment claim, Plaintiff lists several instances in which Howard contacted both her via text and Facebook and made public comments on social media about her. *See id.* at 14, 17.

Plaintiff's allegations, taken as true, clearly amount to violations of Plaintiff's clearly established constitutional rights. In the case of Plaintiff's substantive due process claim, Plaintiff alleges that Howard was essentially conspiring with Bullard for him to commit sexual assault. Students have a clearly established substantive due process right to not be sexually abused by their teachers. *See Hackett v. Fulton Cty. Sch. Dist.*, 238 F. Supp. 2d 1330, 1353 (N.D. Ga. 2002)

(recognizing "a 'liberty' interest by a student in his 'bodily integrity' such that when a state actor, such as a public teacher, violates that 'bodily integrity', a claim under the Fourteenth Amendment arises."). "In non-custodial settings, such as in public schools, conduct by a government actor will rise to the level of a substantive due process violation only if the act can be characterized as arbitrary or conscience-shocking in a constitutional sense." *Adams v. Demopolis City Schs.*, 80 F.4th 1259, 1274 (11th Cir. 2023). As noted above, Plaintiff has alleged that Howard was aware of Bullard's intent to commit sexual assault against Plaintiff and was aware that Bullard was grooming Plaintiff, but did not do anything to stop it and, in fact, provided Bullard "unfettered" access to Plaintiff in order to commit the assault. Plaintiff's allegations, taken as true, are certainly conscience-shocking.

Further, it is well established protection against gender discrimination under the equal protection clause "includes the right to be free from sexual harassment and abuse by state actors, including those at public schools." *Doe v. Clarke Cnty. Sch. Dist.*, Civ. Act. No. 3-22-CV-47 (CDL), 2022 WL 14068678, 2022 U.S. Dist. LEXIS 193521, at *14 (M.D. Ga. Oct 24, 2022) (citing *Hill v. Cundiff*, 797 F.3d 948, 979 (11th Cir. 2015) (recognizing the "clearly established" principle that "deliberate indifference to sexual harassment is an equal protection violation")). Plaintiff has alleged that Howard sexually harassed her while being employed by the State as a teacher, and in relation to events that occurred while Plaintiff was Howard's student and then when she continued to harass Plaintiff as a teacher for Mobile County.

Thus, taken as true, the allegations in Plaintiff's amended complaint sufficiently allege that Howard violated Plaintiff's clearly established constitutional rights, and Howard is not entitled to the defense of qualified immunity <u>at this stage</u>. This in no way precludes Howard from asserting the defense at the summary judgment stage, when the Court has the benefit of considering evidence beyond the pleadings.

## V. CONCLUSION

Accordingly, for the reasons stated above, Defendant Howard's Motion for Judgment on the Pleadings (Doc. 30) is **DENIED**.

**DONE** and **ORDERED** this 21st day of August, 2025.

/s/ Terry F. Moorer
TERRY F. MOORER
UNITED STATES DISTRICT JUDGE